#7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

SEP 1 9 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| RAUL RIOS DURAN,  Plaintiff-Petitioner, § § § | |
| VS. § § § | CIVIL ACTION NO B-01-120  CRIMINAL NO B-99-384-001 |
| UNITED STATES OF AMERICA,  Defendant-Respondent. § § | ALIEN NO: A 39 791 194 |

---

### MOTION TO AMEND

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Raul Rios-Duran, movant acting pro se in the abovestyled and numbered cause of action and would respectfully move this Honorable Court to amend his initial Motion To Vacate, Set Aside, or Correct Sentence. This he would say in support thereof:

---

   On or about June 23, 2001, movant Raul Rios-Duran, (Rios), served upon this District Court his initial 28 USC § 2255 motion, by way of U.S. Postal Service. The motion was filed on July 2, 2001. During the intervening timeframe, on June 25, 2001, the Supreme Court decided IMMIGRATION & NATURALIZATION SERVICE V. ST. CYR, No. 00767 and CALCANO-MARTINEZ et al. V. IMMIGRATION & NATURALIZATION SERVICE, No. 001011. The Supreme Court's holding effectively modifies certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility

1.

Act of 1996 (IIRIRA). The reinterpretive decisions brought forth by the Supreme Court are significant and represent a positive turn away from the anti-immigrant laws of the mid 1990s. More importantly for Rios, the Court's decision(s) casts doubt on the viability of Rios initial deportation and consequently, the underlying conviction. Hence, movant asserts intervening changes of statutory interpretation which could have a substantial effect in his favor, given the unique circumstances of this case and moves to amend his initial writings pursuant to FRCivP 15.

## CASE BACKGROUND

Rios entered the United States over three dacades ago and obtained status with the Immigration and Naturalization Service (INS) as a permanent resident on or about the year 1985. Rios has married twice in his life, his most recent marriage left him a widower while he was incarcerated in 1996. Rios is 53 years old and is the only existing proprietor of a home located at 1016 Eubanks St., Houston, Texas, 77022-3830. Rios has a few misdemeanor offenses on his record that date back to the mid 80s, and a Possession of a Controlled Substance conviction in Harris County (#658649) dated back in 1993, and another accompanying conviction for similar conduct (#658650) dated the same date(s). Movant also has an assault conviction, Harris County, dated mid 1993 (#666798). Rios states to this court that these convictions were all pre-AEDPA and pre-IIRIRA.

In 1998, upon Rios' release from the Texas Department of Corrections, he was deported without a proper deportation/removal hearing which he was entitled to, given the procedural safeguards of Due Process.

01        Subsequently on or about September 3, 1999, Rios was aprehended
02  attempting to cross the U.S./Mexico border at the Port of Entry at
03  Brownsville, Texas. Rios was charged with falsely claiming U.S. Citizenship
04  after having been deported and/or removed from the United States. A ruling of
05  inadmissability was issued regarding Rios. And, on September 30, 1999, a
06  Federal Grand Jury filed a one-count indictment against Rios charging him with
07  Illegal Reentry After Deportation in violation of 8 USC § 1326(a) and (b)(2).
08  Rios pled guilty to the indictment on October 28, 1999, pursuant to a written
09  plea agreement which recommended a sentence at the lowest end of the
10  guidelines. A Presentence Investigation Report (PSR) was prepared on December
11  9, 1999. The PSR base offense level was 8, however due to the felony drug
12  conviction(s) and the aggravated assault conviction a 16 level increase was
13  added pursuant to USSG § 2L1.2(b)(1)(A). Reaching a level of 24, minus three
14  (3) levels for acceptance of responsibility, arriving at a final base offense
15  level of 21. At criminal history category V, Rios sentencing range was
16  determined to be 70-87 months in prison. Finally on January 13, 2000,
17  sentence was imposed by Judge Filemon B. Vela. The sentence pronounced was 70
18  months in prison and three years supervised release. Rios entered into direct
19  appeal, however his public defender filed an <u>ANDERS</u> brief withdrawing as
20  counsel for Rios. As stated previously Rios filed a Motion To Vacate, Set
21  Aside, or Correct Sentence with this District Court on July 2, 2001, which he
22  had sent by mail on or about June 23, 2001. Rios' initial collateral attack
23  focused on an <u>APPRENDI</u> issue which he raised to preserve for future Supreme
24  Court review, and a criminal history/offense level double-counting issue.
25  Rios comes now requesting this amendment alleging an invalid deportation by
26  the Immigration & Naturalization Service, and thereby claiming actual
27  innocence.

## SUMMARY OF THE CASE

Rios was deported/removed in 1998 by the INS pursuant to provisions of the IIRIRA which provide for no availability of discretionary relief, for aliens who have been convicted of an aggravated felony. Due to this reason, Rios was deported/removed without having been provided the oppurtunity to seek/apply for discretionary relief from deportation/removal. Rios was misinformed by the immigration officials that no relief was available to him, when in fact he had previously been designated as eligible for discretionary relief by counsel of the Immigration & Naturalization Service. (See Appendix A1). Rios believes that the misinformation provided by the INS was due to stipulations in the IIRIRA which were broadly interpreted to apply to practically every immigrant having committed any type of transgression of law. Movant will show that the provisions in question, were in fact not applicable to him, as stated by the Supreme Court's decision in INS V. ST. CYR, No. 00767 (6/25/01); CALCANO-MARTINEZ V. I.N.S., No. 001011 (6/25/01). The holdings therein stated in relevant part that (1) an individual who is deportable for a criminal offense committed prior to the effective dates of the AEDPA and the IIRIRA, both of which comprehensively amended the Immigration and Nationality Act (INA)(8 USCS §§ 1101 et seq.) and whose conviction obtained through a plea bargain, can still utilize the waiver-of-deportation provisions under former § 212(c) of the INA as in effect at the time of the individual's conviction; and (2) the federal courts retain jurisdiction under 28 USCS § 2241 to decide questions raised by such individual's habeas corpus petition. (See Appendix A2).

Rios did not waive any rights to a fair hearing. Quite to the contrary, Rios retained counsel in his efforts to find resolve to his

4.

01 deportation/removal problem. Rios' due process rights were violated by
02 defect(s) in the removal and he undoubtedly suffered prejudice because of
03 these defects. The underlying deportation is invalid and Rios is actually
04 innocent of the offense of Illegal Reentry After Deportation. The
05 deportation/removal was obtained unlawfully and cannot stand as a material
06 element of the offense under § 1326. <u>UNITED STATES V. MENDOZA-LOPEZ, 481 US
07 828 (1987).</u>

## DISCUSSION

Our analysis begins and ends with the question whether the removal proceeding was fundamentally unfair in the sense that it resulted in "a denial of justice" or of due process of law. U.S. V. HERNANDEZ-AVALOS, 251 F.3d 505, 507 (5th Cir. 2001); ANIMASHAUN V. I.N.S., 990 F.2d 234, 238 (5th Cir. 1993). It has long been established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. RENO V. FLORES, 507 US 292, 306 (1993); see also, THE JAPANESE IMMIGRANT CASE, 189 US 86, 100-101 (1903). Rios did not, and does not now dispute his deportability, rather, he argues that he was eligible for discretionary relief under Section 212(c) of the INA, 8 USC § 1182(c). The lack of a proper deportation/removal hearing, compiled with the fact that Rios could not have been informed of any discretionary remedies available to him where immigration officials at the time were under the impression that Rios was ineligible, and the abrupt removal of Rios from this country, violated Rios' due process rights and prejudiced him severely where he currently suffers a 70 month term of imprisonment as a result, whether direct or indirect, of the unlawful deportation. "For a defendant charged with illegally reentering the United States after deportation to establish prejudice resulting from a defect in the underlying deportation proceeding, for purposes of a collateral attack, the defendant does not have to show that he or she would have actually been granted relief; instead, the alien must show only that he or she had a plausible ground for relief from deportation." U.S. V. ARRIETA, 224 F.3d 1076 (9th Cir. (2000). And, failure of immigration judge to inform alien facing deportation of possibility of relief from deportation is denial of due process that invalidates deportation if record raises reasonable possibility that defendant may be eligible for relief. U.S. V. MURO-INCLAN, 249 F.3d 1180 (9th Cir. 2001).

In 1993, when Rios pled guilty to his drug related offense(s) and/or the assault offense, he and legal residents in his position were removable from the United States. Rios and others like him, however, could depend on the availability of a hearing to determine his eligibility for relief from removal. Given the dramatic impact removal would have on a legal resident's life, it is likely that a legal resident would, because of the possibility of receiving a lighter sentence, only decide to concede guilt to a crime that renders him or her removable in order to apply for relief from removal. ST. CYR V. I.N.S., 229 F.3d 406, 419 (2nd Cir. 2000); affirmed in I.N.S. V. ST. CYR., No. 00767 (6/25/01).

While the enforcement of the immigration laws is often related to considerations both of foreign policy and the domestic economy, in the enforcement of these policies, the Executive Branch of the Government must respect the procedural safeguards of due process. GALVAN V. PRESS, 347 US 522 (1954); FRANCIS V. I.N.S., 532 F.2d 268 (1976); U.S. V. OSIDACH, 513 FS 51, 82 (1981). Rios acknowledges that this Circuit has precedent that may indicate the need to establish three requirements, i.e., 1) that the deportation hearing was fundamentally unfair: 2) that the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the deportation; and 3) the procedural deficiencies cause the alien actual prejudice,(U.S. V. BENITEZ-VILLAFUERTE, 186 F.3d 651 (5th Cir. 1999); U.S. V. LOPEZ-VASQUEZ, 227 F.3d 476 (5th Cir. 2000)), in order to successfully collaterally attack. Even though Rios believes that the instant case is easily distinguishable from this precedent where Rios did not ever waive any rights he may have had, and, Rios was a permanent resident, unlike the defendant in LOPEZ-VASQUEZ, supra. Nonetheless, Rios asserts that all three requirements set forth by this Circuit are met herein where the

deportation/removal hearing was clearly fundamentally unfair. At a preliminary hearing before an immigration judge, Rios' attorney inquired as to when Rios' actual immigration hearing would be taking place, or something similar to that nature. The immigration judge's response was something to the effect that, "By the time Mr. Rios' hearing takes place, Mr. Rios will probably already be in Mexico." And, as the IJ indicated, this was the scenario. Mr. Rios was indeed deported/removed without his proper hearing and Rios was never informed of any oppurtunities that were available to him under former § 212(c) of the INA. The hearing effectively eliminated the right for Rios to challenge the hearing by means of judicial review where no hearing took place, and Rios was provided with no oppurtunity to apply for discretionary relief, much less appeal any decision(s) made by the immigration judge regarding same, by direct review. And, it is clear beyond a doubt that these deficiencies caused Rios actual prejudice.

This District Court has jurisdiction to provide relief in deportation matters. I.N.S. V. ST CYR, supra; CALCANO-MARTINEZ V. I.N.S., supra. And Rios is not required to exhaust administrative remedies before seeking relief with this Court. GOONSUWAN V. ASHCROFT, 252 F.3d 383, 388 (5th Cir. 2001).

Wherefore, Rios prays that this District Court will vacate judgement and/or sentence in the instant cause of action and remand him to the custody of the Immigration & Naturalization Service for further proceedings, in order that he may be allowed to pursue the discretionary relief that he was entitled to apply for since the beginning. Rios seeks a court ordered new hearing on the matter(s) regarding deportation/removal, or in the alternative that he be released from custody and all further deportation efforts be ceased, and any other relief this court deems necessary.

Respectfully submitted,

*/s/ Raul Rios-Duran*
9/17/2001

Raul Rios-Duran

86833-079

Federal Correctional Institution

Post Office Box 26040

Beaumont, Texas 77720-6040

## CERTIFICATE OF SERVICE

I, Raul Rios-Duran, movant in the preceeding attached writings, do hereby certify under the penalty of perjury that I have filed with the court and filed upon the respondents at: Oscar Ponce, A.U.S.A., 600 E. Harrison St., Suite 201, Brownsville, Texas, 78520; Office of the District Counsel, U.S.I.N.S., P.O. Box 670049, Houston, Texas, 77267-0049, a true and correct copy of the said writings by placing same in a properly addressed, postage prepaid envelope and delivering to prison authorities for forwarding.

9.

```
01
02
03
04
05
06
07
08
09          THE FOLLOWING
10              ARE
11           APPENDICES
12           A1 and A2.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
```

THE FOLLOWING

ARE

APPENDICES

A1 and A2.

10.

APPENDIX A 1

# RECORD OF ACTION

## Litigation and Legal Advice Staff

IMMIGRATION & NATURALIZATION SERVICE
509 NORTH SAM HOUSTON PARKWAY EAST
HOUSTON, TEXAS 77060 (713-847-7953)

COURT
HOU - 2320 Labranch
Houston, TX
HSPC- Houston Service
Processing Center

ALIEN NAME _Duran-Rios_  A-NUMBER _39 791 194_

ATTORNEY FOR ALIEN

| DATE | JUDGE | TA | COURT | ACTION AND DISPOSITION |
|------|-------|----|----|------------------------|
| 6/9/95 | MF | | | OSC reviewed and approved for legal sufficiency. The respondent is detained at TDCJ. Under an agreement with TDCJ, the Service is not to serve EOIR and the respondent with the OSC until the respondent comes into Service custody at HSPC as the respondent is eligible to apply for relief under § 212(c) of the Act. |

[✓] Respondent became eligible on 1/14/93

SDO/HSPC IS TO SERVE THE ORIGINAL OSC UPON EOIR/HSPC WHEN THE RESPONDENT COMES INTO SERVICE CUSTODY AT HSPC.

FORM I-703 (HOU)

152

VOLUME 150 LEd 2d, No. 1 July 24, 2001 APPENDIX A2
Page C-5

# CURRENT AWARENESS COMMENTARY

[Recent Decisions, cont.]

rules carrying the force of law; and (2) instead, such a letter is eligible to claim respect according to its persuasiveness. United States v Mead Corp. (No. 99-1434), decided June 18, 2001.

Deportation: Criminal Offenses: Federal Habeas Corpus:

The Supreme Court held that (1) an individual who is deportable for a criminal offense committed prior to the effective dates of the Antiterrorism and Effective Death Penalty Act of 1996 (110 Stat 1214) and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (110 Stat 3009-546)—both of which comprehensively amended the Immigration and Nationality Act (8 USCS §§ 1101 et seq.)—and whose conviction was obtained though a plea bargain, can still utilize the waiver-of-deportation provisions under former § 212(c) of the Immigration and Nationality Act as in effect at the time of the individual's conviction; and (2) the federal courts retain jurisdiction under 28 USCS § 2241 to decide questions raised by such an individual's habeas corpus petition. Immigration and Naturalization Service v St. Cyr (No. 00-767), decided June 25, 2001.

It was held that (1) under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (110 Stat 3009-546), the Federal Courts of Appeals lack jurisdiction to review administratively final removal orders issued for permanent resident aliens who were convicted of aggravated felonies; but (2) such aliens can proceed with habeas corpus petitions in Federal District Courts. Calcano-Martinez v Immigration and Naturalization Service (No. 00-1011), decided June 25, 2001.

Election: Contributions: Expenditures:

The Supreme Court held that spending limits set by the Federal Election Campaign Act on "contributions," which include "expenditures made by any person in cooperation, consultation, or concert with . . . a candidate" (2 USCS § 441a(a)(7)(B)(i)), by a political party in