

COPY

United States District Court
Southern District of Texas
FILED

NOV 0 2 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAUL RIOS-DURAN<br>PLAINTIFF | § § § | Civil No. B-01-120<br>Crim. No. B-99-384-1 |
| VERSUS | § § | |
| UNITED STATES OF AMERICA<br>RESPONDENT | § § | Motion To Vacate, Set Aside,<br>or Correct Sentence. |

---

**PLAINTIFF'S SECOND MOTION TO AMEND BASED ON NEW GROUNDS
FOR RELIEF UNDER FIFTH CIRCUIT'S INTERVENING DECISION**

---

TO THE HONORABLE JUDGE OF THE COURT:

COMES NOW, Raul Rios-Duran, (Rios), movant acting pro se in the abovenumbered and styled cause of action and would once again move this court to amend his pleadings where newly discovered evidence of grounds for relief have only up until now come to light. Rios brings this action in good faith and in support thereof would show the following:

---

Raul Rios-Duran pleaded guilty to the offense of Illegal Reentry After Deportation on October 28, 1999. Rios was sentenced to a term of seventy (70) months in prison and three years supervised release on January 13, 2000, for the said offense. Rios appealed, however Rios' counselor filed an **ANDERS** brief withdrawing as counsel for Rios and asserting "no nonfrivolous issues to appeal regarding Mr. Rios-Duran's sentence." Thereafter, on July 2, 2001, Rios filed with this court his initial Motion To Vacate, Set Aside, or Correct Sentence based on an **APPRENDI** related sentence-enhancement issue that he raised solely to preserve for possible Supreme Court review and/or retroactivity application and a second issue regarding a double-counting criminal history guideline application(s). Rios thereafter submitted his initial Motion To Amend on September 17, 2001, due to previously unforseeable grounds for relief.

1.

This initial Motion To Amend was filed in this court and was granted on October 18, 2001. The amended pleadings allege an invalid initial deportation/removal where Rios was not provided with his rightful oppurtunity to apply for discretionary relief, as was indicated by the Supreme Court's holding(s) in **INS V ST CYR, 121 S.CT. 2271 (2001); CALCANO-MARTINEZ V INS, 121 S.CT. 2268 (2001)**. And, since the initial deportation was invalid it cannot be subsequently used as an element of a criminal prosecution, where it has been held that when a deportation/removal is obtained unlawfully it cannot stand as a material element of the offense under § 1326 of the INA. **US V MENDOZA-LOPEZ, 481 US 828 (1987)**. Thus, the underlying conviction is invalid. In the instant writings, Rios pleads with this court that it accept this proposed amendment pursuant to FRCivP 15(a) and/or FRCivP 15(d), where a very recent Fifth Circuit decision has now shed light on the authority of this court to provide for downward departure based on "cultural assimilation." And this he would say in support thereof:

---

Notwithstanding the other arguments/issues made in previous pleadings Rios asserts these reasons as to why his sentence should be vacated and remanded.

    1. Defense counsel for Rios submitted a motion for a downward departure where Rios had returned to the United States in his attempt to dispose of real estate property that would be lost for non-payment of taxes. **1 R. 18-21; 2 R. 23-24.**[*] This motion can be construed as a motion for a downward departure based on "cultural assimilation" where the real estate

---

    * The record ("R") is cited by volume and page numbers.

mentioned in the motion for downward departure was indeed Rios' homestead property and Rios had resided therein for a very large portion of his life. It goes without saying that emotional attachment comes with long-term home ownership. Therefore, it can easily be concluded that Rios was emotionally attached to his home of many, many years and his return to "dispose of the property" was also in large part based on "cultural assimilation." Rios spent a large portion of his life in his home. He was attached to everything surrounding his home. Rios residence and surrounding area was indeed Rios' environment and it can only be concluded that he was indeed culturally assimilated here in the United States and his return thereof was because of this fact as well.

2. The abovementioned motion for downward departure should have been based on "cultural assimilation" and Rios' counselor was ineffective for not particularly giving it a title as such, where he failed to adequately investigate the basis for downward departures in regards the offense of Illegal Reentry After Deportation. Counsel should have zealously investigated the facts and caselaw relating to Rios' particular situation and prepared the proper motion and upon sentencing, should have stated to the sentencing judge that he did have authority to depart on the grounds of "cultural assimilation," where such grounds were previously recognized in unpublished Fifth Circuit opinions, i.e., **US V RODRIGUEZ, NO. 99-40065, (1999); US V OJEDA-MARTINEZ, NO. 98-50732 (1999); US V RANGEL-SILVA, 4/8/99**. Had Rios' counselor done so, the outcome may very well have been different. While Rios' counselor did in fact submit a downward departure motion and did bring this motion to the court's attention at sentencing, it appears that both Rios' counsel and this court were unaware of the permissible

3.

grounds for downward departure, that being "cultural assimilation." The record supports this argument where at sentencing the following exchange took place:

> **THE COURT:** Any reason why the report should not be adopted in full?
> **MR. GOMEZ:** No, Sir.
> **THE COURT:** It is so ordered. Do either you or your attorney have anything to say to me before I decide what to do in your case?
> **MR. GOMEZ:** Yes, Your Honor. I had filed a motion for downward departure and I would ask the Court--
> **THE COURT:** On what grounds, Sir?
> **MR. GOMEZ:** Your Honor, Mr. Rios-Duran has a piece of property in Houston that he was attempting to sell and that was the reason for coming over here. He is apparently now going to lose that property because of incarceration. He has no way of being able to sell it. It's valued at approximately $38,000. I would urge the Court to consider that this piece--
> **THE COURT:** Why would he lose it?
> **MR. GOMEZ:** Nonpayment of taxes.
> **THE COURT:** How am I supposed to provide for that? Does he have relatives? If he was worthy, for example, of consideration, wouldn't he be able to have that capability somehow, family or somebody who would be able to pay taxes so they could preserve the property? I am not persuaded counsel.

2 R. 23-24.

3. This court failed to recognize its authority to downward depart on the basis of cultural assimilation where the motion submitted to this court could have been construed as such. As indicated by the record, the court inquires as to "How am I supposed to provide for that?" when defense counsel petitions for the downward departure, apparently unaware of the Fifth Circuit's unpublished opinions recognizing the permissible grounds of cultural assimilation.

4.

4. The Fifth Circuit has only recently published an opinion giving value to Rios' motion for downward departure, thus Rios' was previously unaware of the validity of the argument that the court did in fact have jurisdiction to downward depart given the facts of the case. As stated earlier herein, it appears Rios' counselor was also unaware of the validity of this argument/issue. **US V RODRIGUEZ-MONTELONGO, NO. 00-51023, 9/13/01.**

For the foregoing reasons, Rios in all sincerity and good faith submits this, his second motion to amend pursuant to FRCivP 15(a) or FRCivP 15(d) whichever may apply at this stage, alleging that this court failed to recognize its authority to provide for a downward departure on the basis of "cultural assimilation" and that for this reason the underlying sentence should be vacated and he should be remanded for resentencing in accordance with the provisions set forth in the Fifth Circuit's reasoning in **US V RODRIGUEZ-MONTELONGO, supra.**


Respectfully submitted,

*[signature: Raul Rios Duran]*

Raul Rios-Duran

No. 86833-079

Federal Correctional Institute (Medium)

Post Office Box 26040

Beaumont, Texas 77720-6040

5.

## CERTIFICATE OF SERVICE

I, Raul Rios-Duran, movant pro se in the preceeding attached writings do hereby certify under the penalty of perjury of the laws of the United States that I have served a true and correct copy of same upon the respondent: Oscar Ponce, at 600 E. Harrison St., #201, Brownsville, Texas, 78520-7155, by placing same in a properly addressed, postage prepaid envelope and delivering to prison authorities for forwarding, via US Postal Service, by way of outgoing Legal Mailbox.


Respectfully submitted,

*/s/ Raul Rios Duran*

Raul Rios-Duran

No. 86833-079

Federal Correctional Institute (Medium)

Post Office Box 26040

Beaumont, Texas 77720-6040

6.

# UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

# RAMON RODRIGUEZ-MONTELONGO

Defendant - Appellant

Appeal from the United States District Court

for the Western District of Texas

August 23, 2001

Before KING, Chief Judge, BARKSDALE, Circuit Judge, and SCHELL, District Judge.[(1)]

SCHELL, District Judge:

The main question before this court is whether cultural assimilation is a permissible ground
for downward departure. Because we conclude that cultural assimilation is a permissible ground for
downward departure, we VACATE Rodriguez-Montelongo's sentence and REMAND to the district
court for it to consider whether Rodriguez-Montelongo is entitled to a downward departure on the
basis of cultural assimilation. We also reject Rodriguez-Montelongo's argument that his sentence
violates due process because the Supreme Court has previously rejected an identical argument.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-Appellant Rodriguez-Montelongo, a Mexican citizen, was three-years old when
he was brought to the United States in 1978. He later obtained legal resident status, received his
education, married, and settled with his wife and four children in Colorado. On April 22, 2000,
Rodriguez-Montelongo was convicted on a felony drug charge and deported. On April 30, 2000,
Rodriguez-Montelongo attempted to reenter the United States without obtaining permission from

the Attorney General to apply for readmission.

On August 3, 2000, Rodriguez-Montelongo pleaded guilty to attempting to reenter the United
States illegally after deportation, in violation of 8 U.S.C. § 1326.[(2)] The presentence report ("PSR")
calculated Rodriguez-Montelongo's total offense level as 21. This computation included a base
offense level of 8, an increase of 16 levels because of the prior felony drug conviction, and a
downward departure of 3 levels for acceptance of responsibility. He was also assigned a criminal
history category of II based upon his prior felony drug conviction and the fact that he was on
probation at the time this illegal reentry was attempted. Accordingly, the PSR recommended a
guideline sentence range of 41 to 51 months. Rodriguez-Montelongo objected to the recommended
range, arguing that the offense charged in the indictment carried a maximum penalty of two-years
imprisonment.

At sentencing, the district court concluded that Rodriguez-Montelongo had a qualifying prior
aggravated felony drug conviction, which required an enhancement of his sentence under 8 U.S.C.
§ 1326(b)(2) and § 2L1.2(b)(1)(A) of the United States Sentencing Guidelines (the "Guidelines").
The court then adopted the PSR's sentence-range recommendation. Furthermore, the district court
denied Rodriguez-Montelongo's motion to depart downward from the guideline range on the ground
of cultural assimilation, stating that "to this point the Fifth Circuit has not recognized [cultural
assimilation] as a basis for departure, and until they do I'm not going to depart on that basis."
Consequently, the district court imposed a sentence of 41-months imprisonment.
Rodriguez-Montelongo appeals his sentence.

## II. APPELLATE JURISDICTION

A court of appeals is "generally without jurisdiction to review a sentencing court's refusal to grant a downward departure when its decision is based upon a determination that departure was not warranted on the facts of the case before it." United States v. Thames, 214 F.3d 608, 612 (5th Cir. 2000); see also United States v. Reyes-Nava, 169 F.3d 278, 280 (5th Cir. 1999). Accordingly, this court has jurisdiction over the appeal from the district court's refusal to depart downward only if the refusal was in violation of the law. See United States v. Garay, 235 F.3d 230, 232 (5th Cir. 2000), cert. denied, 121 S. Ct. 1633 (2001); United States v. Yanez-Huerta, 207 F.3d 746, 748 (5th Cir.), cert. denied, 121 S. Ct. 432 (2000). "A refusal to depart downward is a violation of the law only if the district court's refusal is based on the mistaken belief that the court lacked discretion to depart." Garay, 235 F.3d at 232; Thames, 214 F.3d at 612; Yanez-Huerta, 207 F.3d at 748. Therefore, this court may review a district court's refusal to depart if the district court mistakenly believed that it lacked the authority to depart.

The district court's statement that it would not consider a downward departure for cultural assimilation until this court recognizes it as a basis for downward departure indicates that the district court believed it lacked authority to depart on this ground. As such, the panel has jurisdiction over this appeal.

### III. CULTURAL ASSIMILATION AS A PERMISSIBLE GROUND

### FOR DOWNWARD DEPARTURE

Section 5K2.0 of the Guidelines permits the district court to make a downward departure "if

the court finds 'that there exists a[] . . . mitigating circumstance of a kind, or to a degree, not
adequately taken into consideration by the Sentencing Commission in formulating the guidelines that
should result in a sentence different from that described.'" U.S. Sentencing Guidelines Manual
§ 5K2.0 (2000) (quoting 18 U.S.C. § 3553(b)). The Supreme Court has explained that the
Sentencing Commission "did not adequately take into account cases that are, for one reason or
another, 'unusual.'" Koon v. United States, 518 U.S. 81, 93 (1996).

      The Guidelines enumerate certain factors that can never be bases for departure. See id. at 93;
see also U.S. Sentencing Guidelines Manual § 5H1.10 (prohibiting consideration of race, sex,
national origin, creed, religion, and socio-economic status); id. § 5H1.12 (prohibiting consideration
of lack of guidance as a youth); id. § 5H1.4 (prohibiting downward departure for drug or alcohol
dependence). Aside from the limited number of categorical prohibitions, however, the Sentencing
Commission did "not intend to limit the kinds of factors, whether or not mentioned anywhere else
in the guidelines, that could constitute grounds for departure in an unusual case." U.S. Sentencing
Guidelines Manual ch. 1, pt. A, intro. cmt. 4(b); see also Koon, 518 U.S. at 93; Garay, 235 F.3d at
232 n.8. As summarized by the Supreme Court in Koon v. United States:

      So the [Sentencing Reform] Act authorizes district courts to depart in cases that
feature aggravating or mitigating circumstances of a kind or degree not adequately
taken into consideration by the Commission. The Commission, in turn, says it has
formulated each Guideline to apply to a heartland of typical cases. Atypical cases
were not "adequately taken into consideration," and factors that may make a case
atypical provide potential bases for departure. Potential departure factors "cannot,
by their very nature, be comprehensively listed and analyzed in advance," of course.
Faced with this reality, the Commission chose to prohibit consideration of only a few
factors, and not otherwise to limit, as a categorical matter, the considerations that
might bear upon the decision to depart.

518 U.S. at 94 (citation omitted) (quoting U.S. Sentencing Guidelines Manual § 5K2.0).[3]

Rodriguez-Montelongo moved for a downward departure based upon his long-term residence and cultural assimilation within the United States. This court has yet to determine in a published opinion whether cultural assimilation is a permissible basis for downward departure. In a series of unpublished, non-precedential opinions, however, this court appears to have acknowledged that a district court does have the authority to depart downward on the basis of cultural assimilation.[4] See United States v. Terrazas-Acosta, No. 99-50957 (5th Cir. Apr. 13, 2000) (unpublished) (per curiam) ("The record indicates that the district court recognized its authority to depart downward based on cultural assimilation."); United States v. Rodriguez, No. 99-40065 (5th Cir. Oct. 19, 1999) (unpublished) (per curiam) (same); United States v. Ojeda-Martinez, No. 98-50732 (5th Cir. May 27, 1999) (unpublished) (per curiam) (same); United States v. Rangel-Silva, No. 98-40554 (5th Cir. Apr. 8, 1999) (unpublished) (per curiam) (presuming the district court recognized its authority to depart downward on the basis of cultural assimilation).

Moreover, two other circuit courts of appeals have decided that cultural assimilation is a legitimate ground for downward departure. See United States v. Lipman, 133 F.3d 726, 729-31 (9th Cir. 1998); see also United States v. Sanchez-Valencia, 148 F.3d 1273, 1274 (11th Cir. 1998) (per curiam) (relying on Lipman to state that the sentencing court was aware of its authority to depart on this ground).

In United States v. Lipman, the Court of Appeals for the Ninth Circuit concluded that

"[b]ecause the Sentencing Commission has never addressed or proscribed 'cultural assimilation' per
se as a factor that may justify departure, we hold that a sentencing court has authority under U.S.S.G.
§ 5K2.0 to consider evidence of cultural assimilation." 133 F.3d at 730. This is because, as
discussed supra, except for those factors categorically proscribed by the Commission, the Guidelines
"'place essentially no limit on the number of potential factors that may warrant departure.'" Id.
(quoting United States v. Mendoza, 121 F.3d 510, 513 (9th Cir. 1997), in turn quoting Koon, 518
U.S. at 106).[5]

       The Ninth Circuit ultimately concluded that the district court recognized its authority to
depart downward, but chose not to do so on the facts of the case. See id. at 732. Accordingly, the
court acknowledged that it lacked jurisdiction to review the district court's refusal to grant Lipman's
downward departure motion. See id.

       Considering both the Lipman and Sanchez-Valencia decisions and the series of unpublished
opinions from this court, we hold that cultural assimilation is a permissible basis for downward
departure. Therefore, the sentence should be vacated and the case remanded to the district court for
the district court to consider, in its sound discretion, whether Rodriguez-Montelongo's circumstances
are so atypical or extraordinary so as to warrant a downward departure on the basis of cultural
assimilation.

### IV. DUE PROCESS

       Rodriguez-Montelongo challenges his sentence on the ground that it violates due process.
Rodriguez-Montelongo contends that the offense for which he was indicted has a maximum sentence
of two-years imprisonment. See 8 U.S.C. § 1326(a). 8 U.S.C. § 1326(b)(2) increases the maximum

punishment to twenty years if the defendant was deported after conviction for an aggravated felony.

Rodriguez-Montelongo asserts that § 1326(b)(2) creates a separate offense and that an element of
this separate offense is a prior aggravated-felony conviction. Because the indictment did not allege
a prior aggravated-felony conviction, Rodriguez-Montelongo argues that the only offense charged
was that under § 1326(a). Therefore, he contends that because § 1326(a) has a maximum 2-year
sentence, the district court exceeded the statutory maximum by sentencing Rodriguez-Montelongo
to 41 months in prison.

       Rodriguez-Montelongo recognizes that in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224
(1998), the Supreme Court rejected an argument identical to the one he is making here. <u>See id.</u> at
235. He contends, however, that in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme
Court "cast serious doubt" on <u>Almendarez-Torres</u>'s validity. <u>See id.</u> at 489 (stating that "it is
arguable that <u>Almendarez-Torres</u> was incorrectly decided"). Rodriguez-Montelongo asserts that he
raises this issue here only to preserve it for possible Supreme Court review.

       In <u>Almendarez-Torres</u>, the Supreme Court held that the enhanced penalties in § 1326(b) were
sentencing factors, rather than elements of separate offenses. <u>See</u> 523 U.S. at 235 ("In sum, we
believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate
criminal offense."). The Court concluded specifically that a prior conviction need not be treated as
an element of the offense, even if it increases the statutory maximum. <u>See id.</u> at 239-47.

       Although Rodriguez-Montelongo is correct that <u>Apprendi</u> cast doubt on the continued
validity of <u>Almendarez-Torres</u>, it did not overrule that decision. <u>See Apprendi</u>, 530 U.S. at 489-90
(footnote omitted) ("Even though it is arguable that <u>Almendarez-Torres</u> was incorrectly decided, and

that a logical application of our reasoning today should apply if the recidivist issue were contested,
Apprendi does not contest the decision's validity[,] and we need not revisit it for purposes of our
decision today to treat the case as a narrow exception to the general rule we recalled at the outset.").It is for this court to apply the law as it exists and for the Supreme Court to overrule its precedent
if it so chooses. "'[I]f a precedent of this Court has direct application in a case, yet appears to
rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the
case which directly controls, leaving to [the Supreme Court] the prerogative of overruling its own
decisions.'" Agostini v. Felton, 521 U.S. 203, 237 (1997) (quoting Rodriguez de Quijas v.
Shearson/American Express, Inc., 490 U.S. 477, 484 (1989)). Therefore, Almendarez-Torres
still controls. Accordingly, Rodriguez-Montelongo's argument is foreclosed.

## V. CONCLUSION

       For the foregoing reasons, we VACATE Rodriguez-Montelongo's sentence and REMAND
to the district court for it to consider whether Rodriguez-Montelongo is entitled to a downward
departure on the basis of cultural assimilation.

1. District Judge of the Eastern District of Texas, sitting by designation.
2.  Section 1326 provides in relevant part:

      Subject to subsection (b) of this section, any alien who-

          (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

    (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

  shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a) (1999).

3. The Supreme Court has adopted four questions that a sentencing court should consider before departing:

  1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?

  2) Has the Commission forbidden departures based on those features?

  3) If not, has the Commission encouraged departures based on those features?

  4) If not, has the Commission discouraged departures based on those features?

<u>Koon</u>, 518 U.S. at 95 (some internal quotations omitted) (quoting <u>United States v. Rivera</u>, 994 F.2d 942, 949 (1st Cir. 1993)). Pursuant to this framework, if a particular factor, such as cultural

assimilation, is not mentioned in the Guidelines, "the court must, after considering the structure and
theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether
it is sufficient to take the case out of the Guideline[s'] heartland." The court must bear in mind the
Commission's expectation that departures based on grounds not mentioned in the Guidelines will
be "highly infrequent." Id. at 96 (internal quotations and citation omitted).

4. Under Fifth Circuit Rule 47.5.4, unpublished opinions issued on or after January 1, 1996,
are not precedent but may be persuasive.

5. After the Ninth Circuit determined that the district court had the authority to consider cultural assimilation in departing downward because such a factor was not proscribed by the
Guidelines, the court stated that insofar as cultural assimilation is an unmentioned factor, "a
sentencing court can only depart on this basis after considering 'the structure and theory of both
relevant individual guidelines and the Guidelines taken as a whole.'" Lipman, 133 F.3d at 730
(quoting Koon, 518 U.S. at 96). Relying on Koon, the court stated that circumstances must exist that
take the defendant's case out of the Guidelines' "heartland" and that such departures based upon
grounds not mentioned in the Guidelines will be "highly infrequent." Id. at 730. The Ninth Circuit
also concluded that insofar as the factor of cultural assimilation is "akin to the factor of 'family and
community ties,'" a discouraged factor, the district court has the authority to depart in only
"extraordinary circumstances." Id.[6]

6. A "discouraged factor" is one that is "not ordinarily
relevant to the determination of whether a sentence should be
outside the applicable guideline range." U.S. Sentencing Guidelines
Manual ch. 5, pt. H, intro. cmt.; see also Koon, 518 U.S. at 95.
Consideration of a discourage factor is not "necessarily
inappropriate," but should be relied on only "in exceptional
cases." U.S. Sentencing Guidelines Manual ch. 5, pt. H, intro. cmt.;
see also Koon, 518 U.S. at 95.