/2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 17 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| RAUL RIOS DURAN, | § | |
| Plaintiff-Petitioner, | § | |
| | § | CIVIL NO. B-01-120 |
| v. | § | CR. NO. B-99-384-1 |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Defendant-Respondent. | § | |

## UNITED STATES' SUPPLEMENTAL ANSWER TO ISSUES RAISED IN THE AMENDED MOTIONS TO VACATE UNDER §2255 AND BRIEF

The United States of America, by the United States Attorney for the Southern District of Texas, files this Supplemental Answer to the Issues Raised in the Amended Motion and Second Amended Motion to Vacate Pursuant to Section 2255 (Docs.[1] 6,7,8, 10, 11) filed by Petitioner ("Rios Duran").

## JURISDICTION

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 2255.

## DENIAL

The United States denies each and every allegation of fact made by Rios Duran in his amended pleadings, as well in his original motion under § 2255, except

---

[1] "Doc." or "Docs." refers to the document or documents filed in the district court in the civil case filed pursuant to 28 U.S.C. 2255 (B-01-12) and is followed by the document number. "Cr.Doc." or "Cr.Docs." refers to the document or documents filed in the underlying criminal case (B-99-384).

those supported by the record and those specifically admitted herein, and demands

strict proof thereof.

## ALLEGATIONS

Rios makes the following allegations in his amended pleadings in support of

his motion to vacate sentence:

1.     His sentence is illegal because his prior deportation proceeding was
       fundamental unfair.

2.     He was denied his right to effective assistance of counsel because his
       attorney failed to move for a downward departure from the sentencing
       guidelines on the ground of cultural assimilation.

## SUPPLEMENTAL ANSWER AND BRIEF

### Supplemental Statement of the Case

Rios Duran was charged in the United States District Court for the Southern

District of Texas, Brownsville Division, Criminal No. B-99-384, with unlawfully

attempting to enter the United States after having previously been deported and

removed and without having obtained the consent of the Attorney General in violation

of 18 U.S.C. §§ 1326(a) and (b)(2) (Cr.Doc.1). He entered a plea of guilty to the

charge in exchange for the government's recommendation that he receive acceptance

of responsibility and receive a sentence at the low end of the guideline range (Cr.Docs.

10, 11). This court sentenced Rios Duran to 70 months confinement and a three-year

term of supervised release imposed a $100.00 special assessment (Cr.Doc.19). Rios

Duran appealed his conviction (Cr.Doc.23). The Court of Appeals for the Fifth Circuit

dismissed the appeal as frivolous (Cr.Doc.23).  The mandate issued on November 10, 2000 (Cr.Doc. 23).

Rios Duran timely filed his motion to vacate within one year on July 2, 2001 (Doc.1; Cr.Doc.25).  On September 17, 2001, the United States filed its answer (Doc.5).  On September 19, 2001, Rios Duran moved for leave to file  and filed an amended motion to vacate (Docs. 6, 7).  This court granted his motion for leave to amend on October 18, 2001, and directed the United States to respond within 60 days (Doc.9).  On November 2, 2001, Rios Duran again moved for leave to file and filed a second amended motion to vacate (Docs.10, 11).  On November 6, 2001, this court again granted his motion for leave to amend and directed the United States to file its response within 60 days (Doc.12).

<u>Supplemental Statement of Facts</u>[2]

Rios Duran is a citizen of Mexico (PSR at p.2).   He was born in Mexico City, Mexico in 1948.  He completed nine years of formal education in Mexico and all his siblings reside in Mexico.  Rios Duran married Angelita Duran in 1972 and divorced her in 1974, in Houston, Texas.  He married Auscencion Duran in Houston in 1980.

In 1984, Rios Duran was arrested for and convicted of driving while intoxicated in Houston, Harris County, Texas.  In 1985, he was arrested and convicted of the same

_____

[2]Unless otherwise indicated, all references in the <u>Statement of Facts</u> are to the facts set forth at paragraphs 3,17-25, 30-31, 35-37 of the presentence report ("PSR"), which was adopted by this court (Doc.21,p.5).

offense in Houston, Harris County, Texas. In 1986 he was twice convicted of driving with a suspended license. In 1989, he was arrested and convicted of disorderly conduct in Houston, Harris County, Texas.

In March 1993, Rios Duran was arrested for possession of cocaine and for possession of more than five pounds of marihuana. On May 3, 1993, he was placed on deferred adjudication and probation for those offenses. His probation was revoked, he was convicted of aggravated assault; and, on September 2, 1993, he was sentenced to five years confinement. He was released from confinement on June 13, 1998. During his confinement, his wife, Ausencion Duran, died of respiratory failure in 1996. According to Rios Duran, he was deported on August 20, 1998 (Doc.1,p.5;Cr.Doc.25, p. 5). Following his deportation, he worked as a laborer fixing flat tires in Matamoros, Mexico. He has no marketable skills.

On or about September 3, 1999, Rios Duran was questioned by Immigration inspectors about his citizenship as he was crossing the International Bridge in Brownsville, Texas. Rios Duran falsely stated he was a United States citizen. A records check revealed that he had previously been deported and had no legal right to be in the United States. After being convicted in 1999 for illegal entry following deportation, Rios Duran told the probation department he had a girlfriend in Matamoros, Tamaulipas, Mexico, whom he planned to marry.

Response to Rios Duran's First Amended Motion under
28 U.S.C. § 2255

## A. Allegedly Fundamentally Unfair Deportation Hearing

Rios Duran contends that his criminal conviction and sentence should be vacated because his deportation hearing was fundamentally unfair in that he was allegedly misinformed by immigration officials that no relief from deportation was available to him. He contends that, under the Supreme Court's recent decision in *Immigration and Naturalization Service v. St. Cyr*, ___ U.S. ___, 121 S.Ct. 2271 (2001), he was, in fact, eligible for discretionary relief under 212(c), 8 U.S.C. § 1182(c).

## B. Rios Duran's Claim is not Cognizable under § 2255

In *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075 (1989), the Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Rios Duran's case became final after February 2001, when his time for filing a petition for writ of certiorari expired (*See United States v. Thomas*, 203 F.3d 350 (5th Cir. 2000)), a date before the *St. Cyr* decision on June 25, 2001. Therefore, if *St. Cyr* announced a new constitutional rule of criminal procedure, Rios Duran must demonstrate it falls

within one of the *Teague* exceptions or he is precluded from raising his claim in this
§ 2255 proceeding.

The rule announced in *St. Cyr* is that, despite Congress' repeal in 1996[3] of §
212(c), which provided discretionary relief from deportation to aliens convicted of
an aggravated felony, "§ 212(c) relief remains available for aliens ... whose
convictions were obtained through plea agreements and who, notwithstanding those
convictions, would have been eligible for § 212(c) relief at the time of their plea
under the law then in effect." *St. Cyr*. ___ U.S. at ___, 121 S.Ct. at 2293.   Since
the rule only applies to convicted aliens; and, since the basis for the holding is the
application of a presumption of non-retroactivity due to the inherent dangers inherent
retroactive legislation, an argument can be made that it is a new constitutional rule
of criminal procedure.

"The *Teague* rule that new criminal procedural rules cannot be applied
retroactively on collateral review has two exceptions." *United States v. Shunk*, 113
F.3d 31, 35 (5th Cir. 1997).   The first is "when the new rule places `certain kinds
of primary, private individual conduct beyond the power of the criminal law-making
authority to proscribe.'" *Id.* (citing *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073).
The second exception "is for those rules requiring the observance of procedures

_____

[3] Repeal was effected by the Illegal Immigration Reform and Immigrant Responsibility
Act (IIRIRA). *see St. Cyr*, ___ U.S. at ___, 121 S.Ct. at 2293.

`implicit in the concept of ordered liberty.'" *Id*. 311, 313, 109 S.Ct. at 1076, 1077).

Neither exception applies in this case, therefore *Teague* bars review of Rios Duran's

claim.

C. Other Procedural Hurtles

Assuming *arguendo*, that application of the *St. Cyr* rule is not barred by

*Teague v. Lane*, there are significant procedural hurdles to consideration of Rios

Duran's claim on the merits. *See Bousely v. United States*, 523 U.S. 614, 621, 118

S.Ct. 1604, 1610 (1998). "[E]ven the voluntariness and intelligence of a guilty plea

can be attacked on collateral review only if first challenged on direct review.

Habeas review is an extraordinary remedy and will not be allowed to do service for

an appeal." (*Id*. citations and internal quotations omitted). In *United States v.*

*Cabrera-Quintero*, 650 F.2d 942 (8th Cir. 1981), the court held that claims such as

that raised by Rios Duran are not cognizable under 28 U.S.C. § 2255.

Further, since Rios Duran did not raise this issue prior to the entry of his

guilty plea or on direct appeal, he must at least show both cause for his failure to

previously raise the issue and prejudice. *Id*. 523 U.S. at 622, 118 S.Ct. at 1610;

*United States v. Frady*, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594 (1982). A

showing of cause requires a showing of some external impediment that prevented the

petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497, 111

S.Ct. 1454, 1472 (1991). Even though the law may have been settled against him

on an issue, "the futility of raising an objection ... cannot alone constitute cause for

a failure to object at trial." *Engle v. Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558,

1573 (1982).  Assuming *arguendo* that Rios Duran's attorney was unaware that the

section of the IIRIRA repealing § 212(c) was not retroactive as a matter of law, the

basis for making such a claim was available to him.  As the Court explained in

*Bousley*, 523 U.S. at 623 n.2, 118 S.Ct. at 1611 n.2, "'where the basis of a ...

claim is available, and other defense counsel have perceived and litigated that claim,

the demands of comity and finality counsel against labeling alleged unawareness of

the objection as cause for a procedural default.'" (quoting *Engle v. Isaac*, 456 U.S.

107, 134, 102 S.Ct. 1558, 1575 (1982)).

D. No Prejudice

Assuming *arguendo* that Rios Duran's claim is cognizable and that he can

show cause, to show prejudice, he  must show "not merely that the errors at his trial

created a *possibility* of prejudice, but that they worked to his *actual* and substantial

disadvantage." *Frady*, 456 U.S. at 170, 102 S.Ct. at 1596 (emphasis in original).

As the Court explained, to demonstrate prejudice, a defendant on collateral review

must show more than what would be required to demonstrate plain error. *Id*. 456

U.S. at 166, 102 S.Ct. at 1593.  To demonstrate plain error, a defendant must

demonstrate "(1) error, (2) that is plain, and (3) affects substantial rights." *Jones v.*

*United States*, 527 U.S. 373, 389, 119 S.Ct. 2090, 2102 (1999). Review under that standard is circumscribed and used sparingly; and, a court should use discretion to correct it "only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (citation omitted).

(a) No exhaustion of administrative remedies

Rios Duran's argument is that he received misinformation about his eligibility for discretionary relief from deportation causing his deportation hearing to be fundamentally unfair and rendering his subsequent conviction under 8 U.S.C. § 1326 subject to collateral attack. Assuming, without conceding, that Rios Duran received incorrect advice regarding the applicability of § 212(c), in order to launch a collateral attack on the deportation order in the criminal case, Rios Duran is required to show that he exhausted any administrative remedies that may have been available to seek relief against the order. *See* 8 U.S.C. § 1326(d)(1); *see also Goonsuwan v. Ashcroft*, 252 F.3d 383, 385-390 (5th Cir. 2001). Rios Duran makes no allegation that he sought review of any ruling by the immigration court that the provisions of § 212(c) were not applicable to him in 1998. Rios Duran did move to reopen his 1998 removal proceedings after *St. Cyr* was decided, but relief was denied (Annex A).

b) No absence of meaningful review

In addition, the legal basis for Rios Duran's attack on his criminal conviction is essentially the Supreme Court's decision in *United States v. Mendoza-Lopez*, 481

U.S. 828, 837, 107 S.Ct. 2148, 2154 (1987), holding that if "a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction [as in the case of 8 U.S.C. § 1326], there must be *some* meaningful review of the administrative proceeding." (emphasis in original). The Court went on to explain that "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding which the result of the deportation is used to establish an element of a criminal offense."

The record of Rios Duran's deportation proceeding reflects that he was not deprived of the right to have the disposition in his deportation hearing reviewed in a judicial forum. He was represented by counsel at the show cause hearing conducted on July 6, 1998 (Annex B). Afterwards he preserved his appeal (Annex C), but apparently later abandoned it (Annex A).

In addition, review was made available in the subsequent criminal proceeding, but Rios Duran did not avail himself of that review by raising the issue in the district court via a motion to dismiss the indictment or on appeal. Since some meaningful review of his prior deportation was made available to Rios Duran during the criminal proceeding as required by *Mendoza-Lopez*, his prior deportation could be used as a basis for his criminal conviction in this case.

Also, the fact that Rios Duran may have received misinformation about his eligibility for relief from deportation does not mean that his deportation hearing was fundamentally unfair. In *Mendoza-Lopez* the government conceded that the deportation order in that case was fundamentally unfair and the Court therefore "had no need to decide what a defendant must show to prevail in such a collateral challenge." *United States v. Encarnacion-Galvez*, 964F.2d 402, 406 (5th Cir. 1992). As the Court of Appeals for the Fifth Circuit later explained, any procedural defect must have "effectively eliminated his right to direct judicial review of the deportation order."*Id.* (citations omitted). Here, as in *United States v. Vieira-Candelario*, 6 F.3d 12, 15 (1st Cir. 1993), any error of law on the part of immigration officials could not have effectively robbed Rios Duran of his right to review. Nothing prevented him from pursuing a claim on nonretroactivity to the Supreme Court, as did St. Cyr.

As the court explained in *United States v. Hernandez-Rodriguez*, ___ F.Supp.2d ___, ___, 2001 WL 1402030, (N.D.Tex. Nov. 2, 2001), "fundamental fairness is solely an issue of procedural due process." (citing *United States v. Lopez-Vasquez*, 227 F.3d 476, 484 (5th Cir. 2000) and *Mendoza-Lopez*, 481 U.S. at 839).

> "The Supreme Court has made it clear that due process requires only that an alien be provided notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999) (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98, 73 S.Ct. 472, 97 L.Ed. 576 (1953)). "The role of the judiciary is limited to determining whether the procedures meet the essential standard of

fairness under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Landon v. Plasencia*, 459 U.S. 21, 34-35, 103 S.Ct. 321, 74 L.Ed.21 (1982).

The retroactive application of the 1996 INA amendments to Hernandez's case does not rise to the level of a due process violation and therefore did not render the deportation proceeding fundamentally unfair. Hernandez received notice of the intent to remove him to Mexico and a hearing before an immigration judge. He was able to present all relevant arguments at that hearing, including his contention that the 1996 amendments were improper in their retroactive application. Hernandez was not, as he alleges, denied a hearing on the §§ 212(c) and (h) waivers. Rather, he was allowed to argue that he was eligible for such waiver, and Judge Rogers ultimately ruled, that under the 1996 INA amendments, he was not. *See* DX 6 at 7. Hernandez's sole allegation of fundamental unfairness is thus based on the fact that at a *later* date, the Supreme Court agreed with this argument when advanced by another alien in another case. This establishes, however, only that Hernandez's argument was substantively correct; it does not prove that in considering and deciding it, Judge Rogers committed any *procedural* errors rising to the level of due process violations and thus fundamental unfairness. The court declines to hold that, because Judge Rogers applied law that ultimately was deemed incorrect, the deportation hearing was fundamentally unfair.

*United States v. Hernandez-Rodriguez*, ___ F.Supp.2d ___, ___, 2001 WL 1402030,

(N.D.Tex. Nov. 2, 2001).

Rios Duran makes no allegation that he did not receive notice of the intent to

remove him from this country or that he had no opportunity for a hearing. He also

makes no allegation that he was prevented from <u>arguing</u> to the immigration court that

the 1996 INA amendments were improper in their retroactive application. *cf.*

*Encaracion-Galvez*, 964 F.2d at 408 (alien's reliance on attorney's evaluation of

likelihood of success at hearing, agreement to departure to Mexico and alleged misunderstanding that he was waiving any opportunity to appear before judge did not render deportation proceeding fundamentally unfair).

c) No Prejudice resulting from procedural defect

In addition, even if it were assumed that Rios Duran could demonstrate that procedural defects occurred that rendered his deportation proceeding unfair, to succeed on a collateral attack at trial or on direct appeal, he was also required to show actual prejudice from the procedural defects in the proceeding that led to his deportation. *Encarcion-Galvez*, 964 F.2d at 408. Actual prejudice in this context means that "there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported. *United States v.Estrada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995).

1) No retroactivity

As a preliminary matter, Rios Duran cannot meet this standard because the holding in *St. Cyr* does not apply to cases such his that were disposed of before that decision was rendered. *Hernandez-Rodriguez*, ___ F.Supp.2d at ___, n.2. When the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review[.]" *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Rios Duran deportation proceeding was no

13

longer open on direct review when the Supreme Court decided *St. Cyr*; and, he may not use this criminal proceeding to reopen his prior civil case through a collateral attack. *Hernandez-Rodriguez*, ____ F.Supp.2d at ____ n.2; *see also Alvarenga-Villalobos*, ____ F.3d ____, 2001 WL 1482439 (9th Cir. Nov. 26, 2001) (caselaw allowing § 212(c) relief to persons in deportation proceedings when § 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA) enacted would not be applied retroactively on collateral review).

### 2) No plea agreement

In addition, even if it could be retroactively applied, Rios Duran has made no showing that his prior aggravated felony convictions were the product of a guilty plea entered in accordance with a plea agreement. Absent such proof, his case does not fall with *St. Cyr's* holding. *See St. Cyr*, ____ U.S. at ____, 121 S.Ct. at 2292-93.

Finally, *assuming* that *St.Cyr.* could be applied retroactively and that Rios Duran could demonstrate that his prior aggravated felony conviction resulted from a guilty plea entered into as a result of a plea agreement, he must still demonstrate he was prejudiced by what he claims was a procedural defect in the deportation proceeding; and, since he is raising this claim for the first time under 28 U.S.C. § 2255, the degree of prejudice he must demonstrate is significantly higher than it would

have been on direct appeal *See Frady*, 456 U.S. at 166, 170, 102 S.Ct. at 1593, 1596.

### 3) No likelihood of success

An applicant for discretionary relief from deportation must not only show that he is statutorily eligible for such relief, but also that he merits it as a matter of discretion. *Opie v. INS*, 66 F.3d 737, 739 (5th Cir. 1995). "When deciding whether to grant [8 U.S.C. § 1182(c)] relief, the [immigration judge] must balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented on his behalf." *Molenda v. INS*, 998 F.2d 291, 295 (5th Cir. 1993). Moreover, aliens convicted of "serious drug offenses must produce evidence of unusual or outstanding equities. An applicant with a criminal record will ordinarily be required to evidence rehabilitation before the legal leniency of 8 U.S.C. § 1182(c) will be evoked." *Villarreal-San Miguel v. INS*, 975 F.2d 248, 251 (5th Cir. 1992). Here, Rios Duran demonstrably possesses a long criminal record, yet he has neither presented outstanding equities nor demonstrated rehabilitation.

### d) No Prejudice rising to level
greater than necessary for plain error thereby warranting
relief from procedural default

Since Rios Duran is attacking his criminal conviction for the first time on collateral review, his showing of actual prejudice must be greater than what would be required for a showing of plain error. *Frady*, 456 U.S. at 166, 170, 102 S.Ct. at 1593, 1596. In light of Rios Duran's heavy burden,; and, in view of the review of his deportation hearing that was available to him, the inappropriateness of retroactive application of *St. Cyr* and, the unlikelihood of any success on the merits on any application for discretionary relief from deportation, no prejudice warranting relief from his procedural default is demonstrated.

D. Conclusion

For all these reasons, Rios Duran's first amended motion to vacate should therefore be summarily denied.

Response to Rio Duran's Second Amended Motion Under
28 U.S.C. § 2255

Rios Duran also contends he was denied his right to effective assistance of counsel because his attorney did not move for a downward departure from the sentencing guideline range on the ground of cultural assimilation.[4]   Citing *United States v. Rodriguez-Montelongo*, 263 F.3d 429 (5th Cir. 2001), he points out that the

---

[4] To the extent that Rios Duran's second amended motion could be construed as a claim that the district court misapplied the sentencing guidelines by refusing to consider a downward departure on the ground of cultural assimilation, his claim is not cognizable under Section 2255. *See United States v. Williams*, 183 F.3d 458, 462 (5th Cir. 1999) (technical application of the guidelines do not rise to level of constitutional issue; and misapplication will not result in fundamental defect causing complete miscarriage of justice).

Court of Appeals for the Fifth Circuit recently held that a downward departure on such grounds is permissible. He argues that the district court did not realize it had authority to depart on that ground and that counsel's performance was deficient in failing to bring to the court's attention that it had authority to do so on that ground.

To assert a successful ineffective assistance of counsel claim, a defendant "is required to establish both (1) constitutionally deficient performance by his counsel and (2) actual prejudice as a result of counsel's ineffectiveness." *Moody v. Johnson*, 139 F.3d 477, 482 (5th Cir. 1998). "Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim." *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)).

With regard to counsel's performance, the defendant must show that "his counsel's actions `fell below an objective standard of reasonableness.'" *Pratt v. Cain*, 142 F.3d 226, 230 (5th Cir. 1998) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064). There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance; and, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness'." *Id*. (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).

17

With regard to prejudice, a defendant has the burden of demonstrating prejudice to the outcome of his trial. *Earhart v. Johnson*, 132 F.3d 1062, 1067 (5th Cir. 1998). "[T]he right to effective assistance of counsel, both at the trial and appellate level, is recognized not for its own sake, but because of the effect that it has on the ability of the accused to receive a fair trial." *Id.* at 1067-68 (citations and internal quotations omitted). The prejudice prong of the inquiry

> "...focuses on ...whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."

*Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844 (1993)).

As a preliminary matter, the record does not support Rios Duran's claim that the district court did not know that he could depart on the ground of cultural assimilation. This possible ground for departure was never brought to the attention of the district court, therefore the record is silent as to whether the court realized it could depart of the ground of cultural assimilation. *See United States v. Valencia-Gonzales*, 172 F.3d 344, 346 (5th Cir. 1999) (for claim to be cognizable on direct appeal, something in record must indicate district court held erroneous belief regarding authority to depart).

18

With regard to Rios Duran's claim that counsel should have urged the court
to depart downward on the ground of cultural assimilation, Rios Duran has failed to
identify facts that would support a finding that such a departure was even available
to him on that ground or that would support a finding that there is a reasonable
possibility that, but for defense counsel's failure to move for a downward departure
on this ground, the court would have granted the motion.

To the extent that cultural assimilation denotes family and community ties,
factors not ordinarily relevant in determining whether a departure is appropriate,
Rios Duran had the burden of demonstrating family and community ties sufficiently
unusual or extraordinary as to warrant a departure. *See United States v. Lipman*, 133
F.3d 726, 730 (9th Cir. 1998). At sentencing, defense counsel argued that a
departure was appropriate because Rios Duran had reentered the United States in
order to sell his property (Doc. p. 23). Rios Duran now argues that his attorney
should have urged his attachment to his Houston residence as a basis for showing
cultural assimilation:

> This motion can be construed as a motion for a downward departure
> based on "cultural assimilation" where the real estate mentioned in the
> motion for downward departure was indeed Rios' homestead property
> and Rios had resided therein for a very large portion of his life. It goes
> without saying that emotional attachment comes with long-term home
> ownership. Therefore, it can easily be concluded that Rios was
> emotionally attached to his home of many, many years and his return
> to "dispose of the property" was also in large part based on "cultural
> assimilation." Rios spent a large portion of his life in his home. He

> was attached to everything surrounding his home. Rios residence and surrounding area was indeed Rios' environment and it can only be concluded that he was indeed culturally assimilated here in the United States and his return thereof was because of this fact as well.

(Doc.11, p.3). In *Lipman*, 133 F.3d at 730-31, the court distinguished cultural assimilation from the prohibited ground of threat of future deportation by observing that, in the case of cultural assimilation, the motives for the aliens' conduct were familial and cultural rather than economic. Rios Duran's post-conviction proffer, however, is economic in that he argues he came back into this country illegally in order to dispose of his property. In addition, Rios Duran otherwise fails to allege cultural and familial ties that would make his case an unusual or extraordinary one justifying a departure from the guidelines. His allegations, if true, are insufficient to support a finding either that counsel's performance was deficient or that there is a reasonable probability the result of his sentencing proceeding was rendered unreliable.

## Conclusion

Based on the foregoing, Rios Duran's second amended motion under §2255

should be summarily denied.

Respectfully submitted,

MICHAEL T. SHELBY
United States Attorney

*[signature]* for

KATHLYN G. SNYDER
Assistant United States Attorney
910 Travis Street, Suite 1500
P.O. Box 61129
Houston, Texas 77208-1129
TBA No. 07839300

## CERTIFICATE OF SERVICE

I, Kathlyn G. Snyder, Assistant United States Attorney, do hereby certify that
a copy of the above Supplemental Answer to Issues Raised in the Amended Motions
to Vacate under § 2255 and Brief has been mailed on December 17, 2001 to:

Raul Rios Duran
Reg. No. 86833-079
FCI Beaumont
P.O. Box 26040 - Unit NA
Beaumont, Texas 77720-6040

*[signature]* for

KATHLYN G. SNYDER
Assistant United States Attorney

ANNEX A

## THE UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## HOUSTON, TEXAS

| | |
|---|---|
| **FILE NO:**    A39 791 194 | ) |
| | ) |
| **IN THE MATTER OF:** | ) |
| | ) |
|     Raul Rios Duran | )   **IN DEPORTATION PROCEEDINGS** |
| | ) |
|     **Respondent** | ) |
| | ) |

**CHARGES:**   Section 241(a)(2)(B)(i) of the Immigration and Nationality Act- Convicted anytime after entry for a violation of a controlled substance law, other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

              Section 241(a)(2)(A)(iii) of the Immigration and Nationality Act- Conviction of an Aggravated Felony.

**ON BEHALF OF RESPONDENT:**       **ON BEHALF OF SERVICE:**
*Pro Se*                               Michael R. Leppala, Esq.
                                            Assistant District Counsel
                                            Houston, Texas

## DECISION AND ORDER OF THE IMMIGRATION JUDGE

Respondent is a man who is a native and citizen of Mexico. He was admitted into the United States on January 14, 1986 as a lawful permanent resident. On May 3, 1993, the respondent was convicted by the 184th District Court of Harris County, Texas for possessing cocaine and sentenced to six years' probation. On September 2, 1993, he was convicted of aggravated assault by the 184th

Case 1:01-cv-00120   Document 13   Filed in TXSD on 12/17/2001   Page 24 of 30

District Court of Harris County, Texas and sentenced to five years' imprisonment. On September 7, 1993, he was convicted by the 184th District Court of Harris County, Texas for possessing marijuana and sentenced to five years' imprisonment. On May 30, 1995, the Immigration and Naturalization Service ("Service") issued an Order to Show Cause ("OSC") to Respondent and charged him with deportability pursuant to §241(a)(2)(B)(i) and § 241(a)(2)(A)(iii) of the Immigration and Nationality Act.

Respondent appeared before the Court and admitted allegations one through four, eight and nine. He denied allegations five through seven, which the Court found to be true, along with the charges of deportability. On July 6, 1998, the Court ordered Respondent deported to Mexico. Respondent did not appeal this decision to the Board of Immigration Appeals ("Board"). On August 20, 1998, the Service deported respondent from the United States to Mexico. Respondent is currently seeking to reopen his case. The Service has filed a timely motion in opposition.

A motion to reopen or reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. See 8 C.F.R. § 3.23(b).

The respondent was deported to Mexico. He is not able to reopen his case pursuant to 8 C.F.R. § 3.23. Therefore, his motion must be denied.

Accordingly,

IT IS ORDERED that Respondent's Motion to Reopen is DENIED.


**9- 14-01**

Date

Susan L. Yarbrough
Immigration Judge


2

ANNEX B

12/14/2001 17:53 FAX 7137183302          US ATTY APPEALS                    ☒006

## RECORD OF ACTION CONTINUATION SHEET

ALIEN
NAME  Duran-Rios, Raul                                        ?/F

AKA_____          TDCJ NUMBER_____

ATTORNEY FOR ALIEN  Salvador Colon          A-NUMBER  39·791  194

| IJ | ADC | location | | |
|----|-----|----------|--|--|
| 6-11-98 | JB | a. | HV | R appeared w/ counsel. Counsel requested atty prep. time. mlc Reset 6-24-98 IJ Benton |

7-5-98    per hspc.   Found file for 7-6-98 court, with
                      (R) motion for contin.  No notes that
                      warrant or custody determ filed w/
                      HSPC.   ??  Ck w/ court 7-6-98.
                      Note to self: LPR w/ drug agg fel + crime of violence
                      agg fel.

7-6-98 my per hspc.   (R) present w/ Atty Colon.
Exh 3 = (G) Exhs A-E    Admitted Allegs 1-4, denied
   dated 7-6-98        5-7, admitted 8-9; conceded
                       deportability.
                       Ordered deported to Mexico.
                       (R) reserved, due 8-5-98

                   Note: (R) denied 5-7 on basis that convs were
                   def adjs — I admitted proof that
                   guilt was adj.  I ignored my proof
                   & found def adjs are convs.

8-6-01 SV Hfh HOU    Received file w/ (R) MTR. Called HSPC
                     court. They have not received (R) Motion.
                     MEG is faxing (R) Mtn & Chris at HSPC o
                     the IJ will issue a notice w/a due date.
                     We asked that the due date be more than a week
                     from now since PAA is on detail. o
8/16/01  MRL/DVA     rec'd MTR from MEG; prepared
                     response; routed for filing; reg'd an
                     mail to (R)

PAGE 2

U.S. Department of Justice
Immigration and Naturalization Service

# Warrant of Removal/Deportation

UNDER 1-154 DOCKET CONTROL

## AT HOUSTON, TEXAS

File No:

**A39 791 194**

Date: _____ August 18, 1998

**To any officer of the United States Immigration and Naturalization Service:**

INS Name:   **DURAN Rios, Raul**

TDCJ NO: 690541

who entered the United States at or near   **HIDALGO, TEXAS**   on or about **JANUARY 14, 1986**

(Place of entry)      (Date of entry)

is subject to removal/deportation from the United States, based upon a final order by:

☒ an immigration judge in exclusion, deportation, or removal proceedings
☐ a district director or a district director's designated official
☐ the Board of Immigration Appeals
☐ a United States District or Magistrate Court Judge

and pursuant to the following provisions of the Immigration and Nationality Act:

Section(s) **241(a)(2)(B)(i); 241(a)(2)(A)(iii); 241(a)(2)(A)(iii).**

I, the undersigned officer of the United States, by virtue of the authority vested in the Attorney General under the laws of the United States and by his or her direction command you to take into custody and remove from the United States the above-named alien, pursuant to law, at the expense of the appropriation: "Salaries and Expenses, Immigration and Naturalization Service, 1998," including the expenses of an attendant, if necessary.

_James M. Cole_

(Signature of authorized INS official)

James M. Cole, Acting District Director

(Title of INS official)

August 18, 1998, Houston. Texas

(Date and office location)

Form I-205 (Rev. 4-1-97)

ANNEX C

Case 1:01-cv-00120   Document 13   Filed in TXSD on 12/17/2001   Page 29 of 30

## U.S. DEPARTMENT OF JUSTICE
### Executive Office for Immigration Review
### Office of the Immigration Judge

In the Matter of:

_Durán, Raul R._

**RESPONDENT**

Case No.: A _39-741-144_

Docket: _HSPC, Houston, TX_

**IN DEPORTATION PROCEEDINGS**

## ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on _____.
This memorandum is solely for the convenience of the parties. If the proceedings should be appealed, the Oral Decision will become the official decision in this matter.

☑ The respondent was ordered deported to _Mexico (M)._

☐ Respondent's application for voluntary departure was denied and respondent was ordered deported to
_____ or in the alternative to_____.

☐ Respondent's application for voluntary departure was granted until _____, with an alternate
order of deportation to _____ or _____.

☐ Respondent's application for asylum was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for withholding of deportation was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for suspension of deportation was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for waiver under Section _____ of the Immigration and
Nationality Act was ( )granted ( )denied ( )withdrawn ( )other.

☐ Respondent's application for _____ was ( )granted ( )denied ( )withdrawn ( )other.

☐ Proceedings were terminated.

☐ The application for adjustment of status under Section (216) (216A) (245) (249) was ( )granted ( )denied
( )withdrawn ( )other. If granted, it was ordered that the respondent be issued all appropriate documents
necessary to give effect to this order.

☐ Respondent's status was rescinded under Section 246.

☐ Other _____

☐ Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the
Immigration Judge's oral decision.

Immigration Judge

Date: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RAUL RIOS DURAN,           §
   Plaintiff-Petitioner,   §
                           §     CIVIL NO. B-01-120
v.                          §     CR. NO. B-99-384-1
                           §
UNITED STATES OF AMERICA,   §
   Defendant-Respondent.   §

ORDER

Pending before this court is Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255 as well as his amended Motion to Vacate and his Second Motion to Vacate pursuant to 28 U.S.C. § 2255.   After having considered the  motion and amended motions, as well as the responses of the United States, this court concludes that they should be denied for the reasons set forth in the United States' answer and supplemental answer.

Signed this ____ day of _____, 2001.

_____
JOHN WM. BLACK
UNITED STATES MAGISTRATE JUDGE